# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NANCY E. CORRION, JOHN CORRION,
        Plaintiff,

                              Case Number: 10-10669

v.

                              HON. DAVID M. LAWSON

KAREN CORRION, MONICA          UNITED STATES DISTRICT JUDGE
COPELAND,
        Defendant.                   HON. VIRGINIA M. MORGAN
                                          UNITED STATES MAGISTRATE JUDGE
_____/

## REPORT & RECOMMENDATION TO DENY IFP STATUS, TO DISMISS CASE WITH PREJUDICE, TO DISMISS PENDING MOTIONS AS MOOT AND TO IMPOSE SANCTIONS

      This matter is before the court pursuant to an Order of Reference from the district judge for general case management. That order includes determination of *in forma pauperis* (IFP) status, service of process, and review of the case pursuant to 28 U.S.C. §1915(e)(2). IFP status has not been granted and for the reasons set forth in this Report, it is recommended that it be denied and the case dismissed with prejudice. In addition, due to the number of frivolous cases previously filed by these plaintiffs, particularly Mr. Corrion, it is recommended that they be administratively barred from filing, presenting, or seeking IFP status without approval of the Chief District Judge or his designee.

      This case is essentially duplicative of 09-13960 "filed" in October, 2009. On May 19, 2010 the district judge accepted the Report & Recommendation of January 5, 2010 to deny IFP status and dismissed the case as frivolous, see 28 U.S.C. §1915(e)(2). In the instant case, as well as in the 09-13960 case, the Corrions allege that defendant Karen Corrion (John Corrion's ex-

1

wife) and her lawyer (defendant Monica Copeland) conspired to take the plaintiffs' life savings and their marital property in the form of John Corrion's pension and used John Corrion's plea of *no lo contendre* to a felony to secure a money judgment against him in the sum of $955,000.00. That case was dismissed without prejudice, an action which would permit plaintiffs to refile if they paid the filing fee. However, they have not done so; indeed, after the Report & Recommendation was filed and pending before the district judge, they filed two amended complaints adding John Corrion as co-plaintiff, adding the current defendants, deleting the State Treasurer as a defendant, and seeking IFP status again. The amendments rendered both complaints identical. They also rendered both complaints clearly facially deficient and frivolous. In both cases, plaintiffs sue Karen Corrion and her counsel, both of whom are private parties, under 42 U.S.C. §1983 for private claims. The statute is not applicable on its face to these non-state actors and the claim is clearly frivolous. The request to proceed IFP should be denied and the case dismissed.

Further, the numerous pending motions (Request for Receiver, Temporary Restraining Order and Preliminary Injunction #5; Motion for Urgent Temporary Restraining Order/Motion for Preliminary Injunction #6, and Request to Expedite #8) should be denied as moot.

In addition, plaintiff John Corrion and his current wife Nancy are frequent filers. They are or should be aware of the obligation to pursue only non-frivolous cases having been advised by many district judges regarding the standards for filing in earlier opinions dismissing their cases. See, e.g. Corrion v. Caruso, 09-13159–DML-MAR; Corrion v. Corrion, 09-13265-SJM-RSW; Corrion v. Morse, 09-11863-RHC-CEB; Corrion v. Morse, 09-11404-VAR-RSW. The filing of duplicate cases, attempting to evade the filing fee, and filing frivolous claims is

2

sanctionable. The court recommends that they be barred from filing any cases without advance administrative approval of the Chief Judge or his designee.

*Background:*

Plaintiff John Corrion, convicted of assault and solicitation of murder, sues his victim Karen Corrion (his ex-wife) and her lawyer Monica Copeland for civil rights violations allegedly arising out of their collection actions against him since November 14, 2006, including a default judgment of $955,000 entered by the Livingston County Circuit Court in August 2008. Plaintiff Nancy Corrion, John Corrion's current wife, joins as plaintiff alleging that her marital property was taken by the judgment and that defendants have caused her irreparable harm and injury. Plaintiffs allege that their civil rights are being violated by the action of defendants and they are entitled to money damages and injunctive relief. They allege jurisdiction pursuant to 42 U.S.C. §1983. The complaint sets forth claims of unjust enrichment, underhanded tactics to cause plaintiffs financial hardship, denial of habeas corpus to both plaintiffs, and irreparable harm in that plaintiffs have denied John Corrion his right to hire an attorney to fight for his liberty from a wrongful conviction.

John Corrion was convicted of the 2005 assault with intent to do great bodily harm less than murder of Karen Corrion in violation of MCLA 750.84. He pleaded *no lo contendre* and was originally sentenced to probation with the first year to be served in jail. While in jail he solicited another inmate to murder Karen. The Livingston County Prosecutor then charged Mr. Corrion with solicitation of murder in violation of MCLA 750.157b(2); Mr. Corrion was convicted by a jury and sentenced as a second-felony habitual offender under MCLA 769.10 to 40 years. Mr. Corrion appealed and the conviction was affirmed by the Michigan courts. <u>People</u>

v. Corrion, 2008 WL 4332096 (Mich App), *aff'd* 483 Mich 882 (2009). The Court of Appeals opinion thoroughly discusses the several claims of error raised and notes the contentious divorce, Mr. Corrion's disdain for his ex-wife, acts of vandalism against her, the prior history of assault by Mr. Corrion against the same victim and the strength of the case, including rejecting the defense of entrapment and the challenge to the admissiblity of the recorded conversations with the jail informant.

John and Nancy Corrion pursued their disagreement with the outcome of his trial and appeal through various civil suits and collateral attacks. One or both have sued the state judge, the Livingston County Prosecutor, the sheriff, the court clerk in Livingston County, the state treasurer, and Karen Corrion on numerous occasions. All the cases have been summarily dismissed and/or denied IFP status.

**Analysis**

In this case, the basic elements of federal jurisdiction are lacking. Simply put, no Section 1983 claim lies against Karen Corrion and her attorney Ms. Copeland because they are private parties, not state actors. They have no "official" capacity as alleged in the complaint. The case also challenges a state court judgment and consequently is also barred by the *Rooker-Feldman* doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

*Defendants Are Not State Actors*

In any Section 1983 action, the initial inquiry must focus on whether two essential elements are present: whether the conduct complained of was committed by a person acting under color of state law; and whether this conduct deprived the person of rights, privileges or

immunities secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981); Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980); Jones v. Duncan, 840 F.2d 359, 361-62 (6th Cir. 1988). Absent either element, a Section 1983 claim will not lie. Christy v. Bandlett, 932 F.2d 502, 504 (6th Cir. 1991). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations omitted). One acts under color of state law when one exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, then the defendant is considered to be acting under color of state law. West, 487 U.S. at 49; Lugar v. Edmondson Oil Co., 457 U.S. 922, 928, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Therefore, the court must determine whether either defendant performed a state action.

Defendants are not government employees or officials. They are private parties. Although in some limited circumstances, "when the conduct causing the deprivation of a federal right may be fairly attributable to the state," the actions of even private parties may be deemed to be state action. But, no such activity exists here. See, Revis v. Meldrum, 489 F.3d 273, 289 (6th Cir. 2007) (quoting Lugar v. Edmundson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). The determination involves a two-part inquiry. "First, the deprivation in question must be caused by the exercise of some right or privilege created by the State or by a

5

rule of conduct imposed by the state or by a person for whom the State is responsible." Revis, 489 F.3d at 289 (quoting Lugar, 457 U.S. at 937). And second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Revis, 489 F.3d at 289 (quoting Lugar, 457 U.S. at 937). The "actions [must] so approximate state action that they may be fairly attributed to the state." Lansing v. City of Memphis, 202 F.3d 821, 828 (6th Cir. 2000). The United States Court of Appeals for the Sixth Circuit uses three tests to determine if a private actor-defendant's conduct amounts to state action. These are commonly referred to as: 1) the public-function test; 2) the state-compulsion test; and 3) the symbiotic relationship or nexus test. Boykin v. Van Buren Twp., 479 F.3d 444, 452 (6th Cir. 2007) (quoting Chapman v. Higbee Co., 319 F.3d 825, 833 (6th Cir. 2003)); Lansing, 202 F.3d at 828.

**1. Public-function Test**

Under the public-function test, "a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." Chapman, 319 F.3d at 833. This test has typically been interpreted very narrowly, and has been utilized to find state action on the part of a private actor only in rare circumstances. Chapman, 319 F.3d at 833-34. The few examples of state action under this public-function test illustrate its lack of expansive utilization by the courts. See, *e.g.*, Flagg Bros. v. Brooks, 436 U.S. 149, 157-58, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (holding elections is public function); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352-53, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (eminent domain is public function); Marsh v. Alabama, 326 U.S. 501, 505-09, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company-owned town is public function).

Importantly, when a court addresses the issue of state action under the public-function

test, it must conduct a historical analysis of the activity in question to determine whether the activity truly is one that has been traditionally and exclusively performed by the state. Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003); Ellison v. Garbarino, 48 F.3d 192, 196 (6th Cir. 1995) ("Courts that have addressed this issue [public-function test] have typically required some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state."). The Sixth Circuit has also made it clear that the burden is on the plaintiff to make this showing of historical evidence or argumentation to the court deciding the issue of state action. Straub v. Kilgore, 100 Fed. Appx. 379, 385 (6th Cir. 2004) (quoting Wittstock, 330 F.3d at 902); Wittstock, 330 F.3d at 902; Ellison, 48 F.3d at 196.

In this case, plaintiff has not made any argument suggesting that defendants' actions were ones traditionally and exclusively performed by the state and there is no showing of historical evidence with respect to the public-function test. Therefore, this court finds that defendants should not be considered state actors under the public-function test.

**2. State-compulsion Test**

The state-compulsion test "requires that the state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" Wilcher v. City of Akron, 498 F.3d 516, 519 (6th Cir. 2007) (quoting Wolotsky, 960 F.2d at 1335). For the activities of the private actor to constitute state action under this test, more is required than merely the approval or acquiescence of the state in the decisions or actions of the private actor. See Blum v. Yaretsky, 4557 U.S. 991, 1004 (1982). Here, defendants were not coerced or encouraged by the state into committing any of the alleged acts against plaintiff. This court therefore finds that the state-compulsion test for state action is

not satisfied in this case.

### 3. Symbiotic Relationship or Nexus Test

The third of the state-actions tests is the symbiotic relationship or nexus test. Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter maybe fairly treated as that of the state itself." Wolotsky, 960 F.2d 1331, 1335 (6th Cir. 1992). Determinations of state action under the nexus test necessarily depend on the unique facts and circumstances presented by each individual case. "The cases establish no clear standard for identifying a 'sufficiently close nexus.'" Lansing v. City of Memphis, 202 F.3d 821, 830 (6th Cir. 2000); see also Lugar v. Edmundson Oil Co., 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (state-action determination is a "necessarily fact-bound inquiry"). However, the Supreme Court and the Sixth Circuit have provided some guidance to the inquiry. Certain factors have been deemed insufficient, in and of themselves, to establish the required nexus between the private actor's complained-of conduct and the State. Extensive state regulation of a private entity's operations does not establish state action via the nexus test. See, *e.g.*, Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); Adams v. Vandemark, 855 F.2d 312 (6th Cir. 1988); Crowder v. Conlan, 740 F.2d 447 (6th Cir. 1984). Public funding of nearly all of the private actor's activities, as well as the private actor's use of public property, are similarly insufficient to establish the required nexus. See, e.g., Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); Wolotsky, 960 F.2d at 1336; Crowder, 740 F.2d at 450, 453. The minority presence of public officials on the private actor's decision-making board also does not satisfy the nexus test for state action. See, e.g., Jackson v. Metropolitan Edison Co., 419 U.S.

345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); Lansing, 202 F.3d at 831; Crowder, 740 F.2d at 447. Also, the utilization of public services by private actors does not by itself establish the requisite nexus for state action. See, *e.g.*, Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); Ellison v. Garbarino, 48 F.3d 192 (6th Cir. 1995). Furthermore, the mere existence of a contract between a governmental agency and a private party is insufficient to create state action. See, *e.g*, Revis v. Meldrum, 489 F.3d 273, 292 (6th Cir. 2007); McCarthy v. Middle Tennessee Elec. Membership Corp., 466 F.3d 399, 412 (6th Cir. 2006); Simescu v. Emmet County Dept. of Soc. Services, 942 F.2d 372, 375 (6th Cir.1991).

Importantly, it should also be remembered that for this state-action test to be satisfied, the required nexus must be found between the specific complained-of actions of the private actor and the involvement or influence of the State. See Wolotsky, 960 F.2d at 1335 ("[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983."); see also Straub v. Kilgore, 100 Fed. Appx. 379, 385 (6th Cir. 2004) ("In order to show state action, the state must be 'intimately involved' with the challenged conduct."); Crowder, 740 F.2d at 453 (explaining that plaintiff must demonstrate nexus between the specific challenged action and the governmental involvement alleged to provide the basis for a finding of state action). This basis is lacking as well.

*Rooker-Feldman Doctrine Also Bars the Action*

The Rooker-Feldman doctrine holds that inferior federal courts lack subject matter jurisdiction to review the final judgments of state courts. Hutcherson v. Lauderdale County, Tennessee, 326 F.3d 747, 755 (6th Cir. 2003). Two types of claims are barred under this

9

doctrine: "those which allege some injury arising directly from the state court's judgments, and those which allege an injury predating the state-court's judgments but which are still 'inextricably intertwined' with state-court judgments." Howard v. Whitbeck, 382 F.3d 633, 639 (6th Cir. 2004). In determining whether the federal claim falls within the first category, the court must examine the nature of the relief sought and the particular injury alleged. Id. "'[T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" Hutcherson, 326 F.3d at 755 (quoting GASH Assocs. v. Vill. of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)). If the alleged injury resulted from the state court judgment itself, review of the claim in an inferior federal court is barred under the Rooker-Feldman doctrine. If the alleged injury is distinct from, and not inextricably intertwined with, the judgment, Rooker-Feldman does not bar federal review of the claim. Hutcherson, 326 F.3d at 755. A federal claim may be said to be "inextricably intertwined" with a state court judgment where success on the federal claim is dependent upon a determination that the state court incorrectly decided the issues before it. Id. at 756. An exception to the doctrine exists for claims that present a general constitutional challenge to the state law implicated in the underlying proceedings. Howard, 382 F.3d at 639. "However, even where a general constitutional attack is mounted, the state proceedings may foreclose the federal claim under the doctrine of res judicata." Id.

Though plaintiffs appear to have couched their claims in federal constitutional terms (denial of due process), it is readily apparent from the allegations of the complaint that the cause of action is not a genuine attack on the Constitutionality of the state court proceedings. The claim is, instead, nothing more than a thinly-veiled attempt to collaterally attack the order of the

Livingston County Circuit Court. The relief plaintiff ultimately seeks is an injunction to undo and effectively reverse the state-court judgment. This court could not grant such relief without first determining, in effect, that the Circuit Court order was entered in error. Thus, the Rooker-Feldman doctrine bars review.

*Conclusion*

Accordingly, it is recommended that *in forma pauperis status* be denied, that the case be dismissed as frivolous under 28 U.S.C. §1915A, that all pending motions be denied as moot, and that plaintiffs be prohibited from filing any additional cases without advance administrative approval.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                     S/Virginia M. Morgan
                                     Virginia M. Morgan
                                     United States Magistrate Judge

Dated: May 25, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon Nancy Corrion and John Corrion via the Court's ECF System and/or U. S. Mail on May 25, 2010.

                                     s/J. Johnson
                                     Case Manager to
                                     Magistrate Judge Virginia M. Morgan